1

The Honorable Ricardo S. Martinez

2                                                                                                        .

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**
                         **WESTERN DISTRICT OF WASHINGTON**
9                                   **AT SEATTLE**

10

11   PETER AND RENEE NORRIS,                        **No. 2:14−cv−01453−RSM**
     individually and on behalf of the marital
12   community,

13            Plaintiffs,                           **PLAINTIFFS' MOTION FOR PARTIAL**
                                                    **SUMMARY JUDGMENT ON COVERAGE**
14
              vs.
                                                    **NOTE ON MOTION CALENDAR:**
15                                                  **DECEMBER 18, 2015**
     STATE FARM FIRE AND CASUALTY
16   COMPANY, an admitted insurer,                  ORAL ARGUMENT REQUESTED

17            Defendant.

18

19                        **I.         INTRODUCTION**

20          Plaintiffs Norris insured their Leavenworth vacation home, on a steep bluff above the

21   Wenatchee River, with State Farm.  On December 3, 2013 a plumbing fitting suddenly failed

22   discharging water down the south side of the home, toward the river.  The water swept away soil

23   along the south and east sides of the home, leaving the southeast corner of the foundation hanging

24   in the air.  It also destroyed the deck and patios, including their footings, and damaged the

25   southeast corner of the roof to a degree that shoring was required.  State Farm hired an expert who

     opined the pipe did not break from Earth Movement, an excluded cause of loss, but froze and

PLAINTIFFS' MOT. FOR PARTIAL SJ- 1     (2:14-cv-            BOWERS FOREMAN, PLLC
01453) - 1                                                  Telephone (425) 377-1100
                                                            LINDA@LINDAFOREMAN.COM

broke, a covered cause of loss.  State Farm changed experts.  Case Forensics, the second expert,

opined the defective installation of the plumbing pipe, caused the uncontrolled flow of water,

which lead to earth movement.  State Farm then denied coverage on the basis of policy exclusions

for construction defect and earth movement.

State Farm ignored policy provisions which provide coverage; failed to apply, or even

mention, an exception to the construction defect exclusion which renders the latter inapplicable

and violated its own Claim Guidelines which direct coverage for resulting damage caused by

defective construction.   Norris asks this court to rule, as a matter of law, that the State Farm policy

covers the Norris loss.

## II.      FACTUAL BACKGROUND

The parties agree the Loss to the Norris vacation home, on a slope above the Wenatchee

River in Leavenworth, occurred on December 3, 2013 when a PVC water supply pipe failed. [Dkt.

#1-3, at 3, ¶3.4; Dkt. #5 at 2-3, ¶¶3.3 & 3.4].  As illustrated below, the water headed south toward

the river, taking with it the soil along the eastern and southern elevations of the home. [11.19.15

Decl. of L. Foreman, Exh. A at 33].



Figure 1 – Aerial Image (Source:  Google Earth)

PLAINTIFFS' MOT. FOR PARTIAL SJ- 2      (2:14-cv-
01453) - 2

BOWERS FOREMAN, PLLC
Telephone (425) 377-1100
LINDA@LINDAFOREMAN.COM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Norris hired Nelson Geotechnical Associates, Inc., and CG Engineering to make geotechnical and structural engineering evaluations; to design emergency stabilization and to make permanent repair recommendations. [Decl. of G. Guillen, ¶2].  The slab on grade foundation was supported by footings, as were the exterior decks and patios.  The massive release of water washed away the soil under the southeast corner of the foundation, leaving it cantilevered out hanging in the air.  The footings for that corner were there, but offered no structural support. The decks and patios were destroyed when their footings were swept away down the hill. The destruction of these footings caused damage to the southeast corner of the roof as it started to cave in. [Decl. of G. Guillen, ¶3].

The slope was stable but the house was not. Mr. Guillen opined that the home was uninhabitable and had a significant risk of portions of the house cracking and moving downslope. [Decl. of G. Guillen, ¶¶ 4&6].  The home would have come apart and fallen down the hill on dead weight alone. Live loading increased this risk and was a concern which caused Mr. Guillen to have all furniture and contents moved to the back of the house.  The risk of snow, bringing more live load, added to the risk of failure. [Decl. of G. Guillen, ¶ 4].  Emergency stabilization was needed immediately.  Engineers Shawish and Guillen recommended the residence be underpinned, on at least a temporary emergency basis.  The emergency stabilization work included installation of eighteen (18) 2" diameter pin piles to support the undermined foundation along the southern and eastern portions of the residence. [Decl. of G. Guillen, ¶4 & Exh. A].

In Spring 2014 Norris installed permanent repairs consistent with the engineers' recommendations. [Decl. of G. Guillen, ¶5]. The pin piles from the emergency repairs became part of the permanent foundation.  Other repairs included:

- The installation of a new shotcrete retaining wall, parallel to the existing east foundation wall, extending down to the existing ground surface, supported by the previously installed pin piles, and helical anchor tiebacks to the core of the slope.

BOWERS FOREMAN, PLLC
Telephone (425) 377-1100
LINDA@LINDAFOREMAN.COM

- The slab on grade would be backfilled with geofoam blocks and pressurized grout.

- The deck and patios were rebuilt.

- The roof and its supporting posts were repaired.

[Decl. of G. Guillen, ¶5 & Exh. A].

 

[09.14.15 Decl. of L. Foreman, Exh. 3]

These repairs are shown on a schematic, Exhibit B to the Decl. of G. Guillen.  In Mr. Guillen's

opinion the home was not inhabitable until the permanent repairs were effected. [Decl. of G.

Guillen, ¶ 6].

### III.   STATE FARM POLICY & DENIAL

Norris purchased Policy No. 47-GK-0621-8 covering the term August 2, 2013 through

August 2, 2014.  The Loss occurred on or about December 3, 2013.  Norris paid all premiums.

State Farm refunded no premiums or cancel the policy after the Loss.  The home has been

continuously insured by State Farm up through the present date. [11.20.15 Decl. of P. Norris, ¶ 2].

**State Farm's Denial**

State Farm immediately hired South Sound Geotechnical Consulting.  On December 27,

2013, the latter provided a report which concluded:

> It is our opinion that the waterline leading to the house broke resulting in the failure
> of the soils around the foundation and in the slope based on the information
> available to us at this time and our observations at the site.  The cause of the
> waterline break is more likely than not a result of the pipe freezing and rupturing.

PLAINTIFFS' MOT. FOR PARTIAL SJ- 4     (2:14-cv-
01453) - 4

BOWERS FOREMAN, PLLC
Telephone (425) 377-1100
LINDA@LINDAFOREMAN.COM

[11.19.15 Decl. of L. Foreman, Exh. D at 96-97].  This report was not provided to Norris. [Decl. of P. Norris, ¶ 3].

State Farm then hired Case Forensics.  Two months after the Loss, on February 4, 2014, State Farm denied coverage. The denial cites several policy provisions without explaining how they apply. Interpreting its expert report, State Farm described the "Cause of Loss":

> **Cause of Loss**
> Based upon the report from Case Forensics, the cause of the loss was the result of several things which were spelled out in the report from Case Forensics. The report determined that the cause of the failure of the PVC water line was due to defective, inadequate, faulty or unsound installation. This defective installation contributed to and may have caused the failure of the PVC fitting which resulted in uncontrolled water release at the location of the break beneath the ground.
> This flow of water resulted in the erosion and displacement of an extensive amount of soil from around and beneath your home, which caused the undermining of the foundation and the collapse of your deck.

[Dkt. #1-3 at 26].

This explanation is confusing, at best.  State Farm never identifies the "cause", only saying it "was the result of several things."    Another version is found in its Answer:

> State Farm admits that the soil displacement and erosion damage to the foundation appear to have been caused by improperly installed water lines and weather conditions. State Farm admits that the Ponderosa Community Club reported an approximate 4-5 feet drop in the reservoir serving the Plaintiffs' house around the time of the loss. State Farm further admits that there was soil displacement at the east and south sides of the house effecting the decks.

[Dkt. #5 at 3, ¶3.4].

After changing experts, State Farm apparently dropped freezing. The role of weather is explained in Case Forensics' January 24, 2014 report to State Farm:

> It is likely that the extraordinarily cold temperatures experienced at the house during the week of the PVC fitting failure contributed to the loss by affecting the ductility, shrinkage, and resistance to impact loading/pressure surges. This is evidenced by research of the properties of PVC in cold temperatures and by anecdotal information regarding several other pipe failure incidences within the PCC during the same approximate time period.

[Dkt. #1-3, at 24].

Most recently, State Farm offered these opinions from Case Forensics in in Expert Disclosures:

PLAINTIFFS' MOT. FOR PARTIAL SJ- 5     (2:14-cv-01453) - 5

BOWERS FOREMAN, PLLC
Telephone (425) 377-1100
LINDA@LINDAFOREMAN.COM

4.1   The cause of the mass movement of soils at the Norris site on December 4, 2013 was the uncontrolled release of thousands of gallons of water from the failed fitting in the domestic water supply line located near the northeast corner of the house. The discharged water likely infiltrated, saturated, and increased the density of the surrounding soils until mass soil movement was initiated.
Erosion of soils resulting from running water likely occurred in concert with the uncontrolled water release until the flow of water was stopped by shutting the control valve.

4.2   The cause of the failure of and water release from the water supply line at the Norris site on December 4, 2013 was the fracture of a PVC fitting between the upstream PVC pipe from the valve box and the PEX tubing that provided service to the house.

[11.19.15 Decl. of L. Foreman, Exh. A at 24].

## IV.     ISSUES PRESENTED

1.  Is the Coverage B "specified peril" of **Sudden and Accidental Discharge** from a plumbing system included in the "all-risk" Coverage A for the Dwelling?

2.  State Farm clearly asserts defective installation caused the Loss, and, not so clearly, appears to assert weather was a cause. These causes are tied to exclusions found in Paragraph 3— **Losses Not Insured**. Assuming the plumbing line was defectively installed, does the exclusion "for any loss caused by…defect …in construction" unambiguously bar coverage?  Assuming cold temperatures affected the pipe, does the exclusion for "weather conditions" unambiguously bar coverage?  Both exclusions lead to these issues:

a. Did State Farm's failure to include an exclusion for **Sudden and Accidental Discharge** in **Losses Not Insured** preclude application of the Paragraph 3 exclusions?

b. The final sentence of Paragraph 3 (ignored by State Farm) limits its application: *"[T]his exclusion applies only if the physical loss is a loss described in Paragraphs 1. or 2. above."* Does the latter clause trigger coverage for Norris because it is undisputed the physical loss to the home is not described in Paragraphs 1 or 2 of **Losses Not Insured**?

3.  Does the Efficient Proximate Cause Rule ("EPC") operate in favor of coverage if the peril of **Sudden & Accidental Discharge** was the predominate cause?

PLAINTIFFS' MOT. FOR PARTIAL SJ- 6     (2:14-cv-01453) - 6

4.  Was the Additional Coverage for Collapse triggered by the destruction of the deck, patios and caving in of the roof?

5.  If an Insured Loss occurred, is Norris entitled to coverage for emergency, temporary repairs?

6.  Does the exclusion for land in **Property Not Insured**, clearly and unambiguously, preclude coverage for the repairs to the Norris foundation, slab and footings?

## V.       LEGAL AUTHORITIES AND ARGUMENT

**1.       Defective installation of a plumbing line that causes a Sudden and Accidental discharge is a Loss Insured.**

State Farm's fundamental error was its failure to acknowledge that the "specified peril" of **Sudden and Accidental discharge** of water from a plumbing system found in the **Personal Property** coverage is included in the "all-risk" **Dwelling** coverage. All perils not specifically excluded are covered and there is not a specific exclusion for **Sudden and Accidental discharge.** State Farm compounded this error by incorrectly applying exclusions, a point clarified by the Claims Guidelines which acknowledge coverage for the resulting damage from a defective installation or defective pipe fitting.  It further erred by ignoring, and not applying, the limitation to the exclusions.

a.       Sudden and Accidental Discharge is covered in the "all-risk" Dwelling coverage because it is a specified peril not expressly excluded.

**Section I—Losses Insured** describes "all risk" coverage for the Dwelling--Coverage A ("**Dwelling**") and "specified perils" coverage for Personal Property--Coverage B ("**Personal Property**"). [11.19.15 Decl. of L. Foreman, Exh. B, State Farm Policy, at 68 (**Dwelling**), at 68-70 (**Personal Property**)].  Apropos to Norris is "specified peril" #12, the "**Sudden and accidental discharge** . . . of water . . . from within a . . . plumbing system." [*Id.* at 69]. The policy states coverages A&B apply "except as provided in **Section I-Losses Not Insured.** [*Id.* at 68].  This peril is not excluded in **Section I**. [*Id.* at 70 & 71].  Fundamentally, under "all-risk" coverage, a

PLAINTIFFS' MOT. FOR PARTIAL SJ- 7      (2:14-cv-01453) - 7

peril is insured unless it is excluded.  State Farm identified sixteen insured perils in the "**Personal Property**" coverage.  These perils are covered under the **Dwelling** provisions unless specifically excluded.

The Supreme Court described the differences between "specific peril" and "all-risk" policies in *Vision One, LLC v. Philadelphia Ind. Co.,* 174 Wash. 501, 513-14, 276 P.3d 300 (2012):

> "'Named perils' or 'specific perils' policies provide coverage only for the specific risks enumerated in the policy and exclude all other risks." Steven Plitt, Daniel Maldonado & Joshua D. Rogers, *Introductory Concepts of the Risk; Public Policy Insurability, and Causation*, in 7 COUCH ON INSURANCE 3D § 101:7, at 101–17 (2006). All-risk policies, on the other hand, "provide coverage for all risks unless the specific risk is excluded." *Id.; see also Findlay v. United Pac. Ins. Co.*, 129 Wash.2d 368, 378, 917 P.2d 116 (1996) (noting that in an all-risk policy, "any peril that is not specifically excluded in the policy is an insured peril"); *Villella v. Pub. Emp. Mut. Ins. Co.*, 106 Wash.2d 806, 816, 725 P.2d 957 (1986) (noting that "[i]n the case of all risk homeowners insurance, the peril insured against would be any peril that is not specifically excluded"); *McDonald v. State Farm Fire & Cas. Co.*, 119 Wash.2d 724, 731 n. 5, 837 P.2d 1000 (1992) (describing all-risk insurance as " 'a promise to pay upon the fortuitous and extraneous happening of loss or damage ... from any cause whatsoever, ... except when occasioned by the wilful or fraudulent act or acts of the insured' " (alterations in original) (quoting 2 WARREN FREEDMAN, RICHARDS ON THE LAW OF INSURANCE § 212 (5th ed.1952))

If State Farm intended to exclude this peril, it was incumbent upon it to do so clearly and specifically.  A sudden and accidental discharge could have many origins, including a defective installation or a defective part or weather, but State Farm chose not to protect itself from that possibility by writing specific exclusions in the Dwelling coverage.

State Farm's Denial is based on its expert's opinion of defective pipe installation and weather conditions from Paragraph 3, in **Section I—Losses Not Insured:**

> 3. We do not insure under any coverage for any loss caused by one or more of the items below:
> a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;
> b. defect, weakness, inadequacy, fault or unsoundness in:
> (1) planning, zoning, development, surveying, siting;

BOWERS FOREMAN, PLLC
Telephone (425) 377-1100
LINDA@LINDAFOREMAN.COM

1

        (2)   design,   specifications,   workmanship,   construction,   grading, compaction;

2

        (3) materials used in construction or repair; or

        (4) maintenance;

3

of   any   property   (including   land,   structures,   or   improvements   of   any kind)whether on or off the **residence premises;**

4

c. weather conditions

5

[*Id.* at 20; Dkt. #1-3, at 27-28].

6

State Farm does not mention a specific exclusion for **Sudden and Accidental discharge** because

7

there is none.

8

b. Construction defects and weather do not bar coverage because the final sentence limits the

9

application of Paragraph 3 exclusions.

10

      Setting aside the coverage for **Sudden and Accidental** discharge, Paragraph 3 triggers

11

coverage. The Denial quoted the entirety of Paragraph 3 except the final sentence limiting the

12

application of that paragraph's exclusions. [Dkt. #1-3, at 27-28].  The scope of Paragraph 3 cannot

13

be determined without reference to this missing final sentence: *"[T]his exclusion applies only if*

14

*the physical loss is a loss described in Paragraphs 1. or 2. above."* [Emphasis supplied.]

15

[11.19.15 Decl. of L. Foreman, Exh. B at 71].  The phrase "physical loss" is drawn from **LOSSES**

16

**INSURED**, where State Farm commits to "insure for accidental physical loss to property";

17

"property" being the "**Dwelling**" and "**Personal Property**." [*Id.* at 68].  Based on the omitted

18

sentence, the construction defect exclusion will apply only if, the "physical loss" to the **Dwelling**

19

is described in Paragraphs 1 or 2 of **LOSSES NOT INSURED.**   Paragraphs 1 and 2 contain many

20

exclusions but none describe the type of physical damages suffered at the Norris home.  In fact,

21

State Farm identified no excluded "physical loss" in its Denial. [Dkt. #1-3, at 26-28].

22

Accordingly, the Norris Loss is covered because the Paragraph 3 exclusions don't apply.

23

      State Farm did not intend for Paragraph 3 to apply.  This is proved by its directions to

24

claims representatives.  The Claims Guidelines produced in discovery unequivocally prove State

25

Farm would cover resultant damage caused by a defect in a fitting or a defect in installation so

PLAINTIFFS' MOT. FOR PARTIAL SJ- 9     (2:14-cv-01453) - 9

BOWERS FOREMAN, PLLC
Telephone (425) 377-1100
LINDA@LINDAFOREMAN.COM

long as that damage was to property other than the defective part. Referring to Paragraph 3 in

**LOSSES NOT INSURED**, the Claims Interpretation Guidelines state:

> Under this section, we do insure for resulting losses , unless the resulting loss is a loss not isnured.
>
> Example:      Claim is made to replace a roof that was installed defectively.
>
>                   This claim consists solely of defective construction. There is no coverage because there is no accidental direct physical loss.
>
> Example:      A defective fitting on the plumbing system fails, causing a pipe to break, and flooding the house with water.
>
>                   The defective fitting is the proximate cause of the loss. However, since this portion of the loss is attributable to conduct or defect, it is eliminated from consideration in analyzing causation. Since the water damage is not excluded, the entire loss is covered, except the portion of the loss consisting of conduct or defect. The defective fitting should not be paid for.

[11.19.15 Decl. of L. Foreman, Exh. C at 89-90].

This claims directive entirely follows the policy.  All the provisions fit together.  A

**Sudden and accidental discharge** from a plumbing system is a covered cause of loss in Coverage

A-Dwelling because it is not specifically excluded.  Further the import of the Paragraph 3

limitation requiring excluded "physical loss" is consistent with the Claims Interpretive Guidelines,

which explain how resulting building damage is covered, because it is the type of "physical loss"

which is not excluded in Paragraphs 1 and 2.

The coverage for resulting damage from a suddenly broken pipe is proved by the Policy's

coverage for damage from the discharge of water from frozen pipes.[1]  Coverage is excluded if the

building is vacant, unoccupied or under construction, unless the Insured *(1) maintained heat in the*

*building; and  (2) shut off the water supply and drain the system and appliances of water.*

[11.19.15 Decl. of L. Foreman, Exh. B at 70]. The Norris house was not vacant, unoccupied or

---

[1] State Farm's disregarded expert, South Sound Geotechnical, investigated whether earth movement or the plumbing break caused the loss.  It concluded "*The cause of the waterline break is more likely than not a result of the pipe freezing and rupturing.*"  [11.19.15 Decl. L. Foreman, Exh. D at 96-97].

PLAINTIFFS' MOT. FOR PARTIAL SJ- 10      (2:14-cv-01453) - 10

BOWERS FOREMAN, PLLC
Telephone (425) 377-1100
LINDA@LINDAFOREMAN.COM

under construction.[2]  Subsection (2) does not apply because this part of the pipe was not controlled by the house's shut-off valve. [11.19.15 Decl. of L. Foreman, Exh. C at 91]. Under this exception to the exclusion, the cost to repair the plumbing line is not covered but the resulting damage to property under **Coverage A** is recoverable; a result entirely consistent with Norris' policy interpretation.

**2.  The Earth Movement Exclusion does not negate coverage because the Efficient Proximate Cause Rule applies.**

State Farm does not explain how this exclusion precludes coverage; not in its Denial, not in its Answer; and not in any expert report. Possibly this is because State Farm maintains only one thing consistently, being that the allegedly defective installation of the plumbing line caused the uncontrolled discharge of water.  It has never stated "Earth Movement" caused the plumbing line to break.  The Denial discusses "soil displacement" and "erosion" and cites the policy language but never explains how the loss was caused by "Earth Movement."

> 2. We do not insure under any coverage for any loss which is caused by one or more of the items below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> **b.   Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION 1 — ADDITIONAL COVERAGES, Volcanic Action.**

[Dkt. #1-3 at 27].

a. The Efficient Proximate Cause Rule does not permit State Farm to rely on the Earth Movement Exclusion to avoid coverage.

Certainly Earth Movement was a part of the sequence of events leading to the physical loss to the home.  But its appearance in the chain of causation does not bar coverage.  If State Farm is

---

[2] The fact the Norris were not home at the time of the loss, does not mean the building was "unoccupied." *Rojas v. Scottsdale*, 267 Neb. 922,  678 NW. 2d 527 (2004)

BOWERS FOREMAN, PLLC
Telephone (425) 377-1100
LINDA@LINDAFOREMAN.COM

making this argument, it is overlooking the Efficient Proximate Cause Rule ("EPC"). The EPC, a

long established principle of Washington policy interpretation was explained by the Supreme

Court in *Vision One, LLC v. Philadelphia Ind. Co.,* 174 Wash. 501, 519, 276 P.3d 300 (2012):

> "The efficient proximate cause rule applies only when two or more perils combine
> in sequence to cause a loss and a covered peril is the predominant or efficient cause
> of the loss. *McDonald*, 119 Wash.2d at 732, 837 P.2d 1000; *Kish v. Ins. Co. of N.
> Am.*, 125 Wash.2d 164, 170, 883 P.2d 308 (1994). In such a situation, the efficient
> proximate cause rule mandates coverage, even if an excluded event appears in the
> chain of causation that ultimately produces the loss. *Safeco Ins. Co. of Am. v.
> Hirschmann*, 112 Wash.2d 621, 628, 773 P.2d 413 (1989). The efficient proximate
> cause rule operates as an interpretive tool to establish coverage when a covered
> peril "sets other causes into motion which, in an unbroken sequence, produce the
> result for which recovery is sought." *McDonald*, 119 Wash.2d at 731, 837 P.2d
> 1000.

State Farm has repeatedly identified defective plumbing installation as the cause of the

loss, (a **Loss Insured**, as Norris has explained) with **Sudden and Accidental discharge,** being

another event in the sequence. Both parties agree these events preceded any Earth Movement.

Under the EPC, the Loss is covered if Norris is correct on any of their theories of coverage.

b. The case law supports the application of the EPC.

The Washington Supreme Court has addressed earth movement exclusions and enforced

several. None of the cases presented a chain of causation which commenced with a "specified

peril." Further, in each case the exclusion was more comprehensive than the "caused by" language

in the Norris Policy. In *Graham v. Public Employees Mut. Ins. Co.,* 98 Wash.2d 533, 535, 656

P.2d 1077 (1983), the policy did not cover loss "resulting directly or indirectly… from earth

movement . . . caused by, resulting from, contributed to or aggravated by: a. earthquake, landslide,

mudflow, earth sinking, rising or shifting ..." but contained a specific exception being "[d]irect

loss by ... explosion ... resulting from earth movement is covered."  According to the Court,

applying the EPC, if the jury found the cause of loss was an explosion, the earth movement

exclusion would not bar coverage. *Id.* at 538. In *Villella,* the policyholder, whose home had

dropped 8 inches on one side, alleged the efficient proximate cause of his loss was negligent

construction. The insurer denied coverage on the basis of a clause that excluded "any loss caused

PLAINTIFFS' MOT. FOR PARTIAL SJ- 12     (2:14-
cv-01453) - 12

1

2    by, resulting from, contributed to or aggravated by [earth movement]". The Supreme Court noted

3    that the policy covered negligent construction by failing to expressly exclude it and ruled the earth

4    movement exclusion could not be used to deny coverage if negligent construction was the efficient

5    proximate cause of the loss. *Villella v. Public Empl. Mut. Ins. Co.,* 106 Wash.2d 806, 819, 725

6    P.2d 957 (1986). In *Safeco Ins. Co. of Am. v. Hirschmann,* 112 Wash.2d 621, 773 P.2d 413 (1989),

7    the policyholders' homes sustained damage when the hillside on which they were built collapsed

8    after a period of heavy rains. Weather conditions were covered because the policy did not

9    expressly exclude them. The insurer denied coverage under a clause that excluded "loss caused by

10   [earth movement], *whether occurring alone or in any sequence with a covered peril". Id.* at 624.

11   Finding this language functionally similar to the policy in *Villella,* the Supreme Court held it

12   improperly circumvented the efficient proximate cause rule.

     c. In <u>*McDonald*</u>, the Supreme Court enforced a State Farm Earth Movement exclusion broader

13   <u>than the one in the Norris policy.</u>

14          The Supreme Court enforced a State Farm exclusion for earth movement in *McDonald v.*

15   *State Farm Fire & Cas. Co.,* 119 Wash.2d 724, 728 (in footnote), 837 P.2d 1000, but the lead-in

16   clause to Paragraph 2 of  **LOSSES NOT INSURED** which contained the earth movement

17   exclusion, was significantly broader than the analogous provision in the Norris policy:

18           We do not insure under any coverage for loss (including collapse of an insured
             building or part of a building) which would not have occurred in the absence of one
19           or more of the following excluded events. We do not insure for such loss regardless
             of: a) the cause of the excluded event; or b) other causes of the loss; or c) whether
20           other causes acted concurrently or in any sequence with the excluded event to
             produce the loss:
21

22   Here is Paragraph 2 from the Norris Policy:

23           We do not insure under any coverage for any loss which is caused by one or more
             of the items below, regardless of whether the loss occurs suddenly or gradually,
24           involves isolated or widespread damage, arises from natural or external forces, or
             occurs as a result of any combination of these.
25

     [11.19.15 Decl. L. Foreman, Exh. B at 70]

     PLAINTIFFS' MOT. FOR PARTIAL SJ- 13     (2:14-
     cv-01453) - 13

1

2

Another significant difference between the State Farm policy in *McDonald* is Paragraph 4 of

**LOSSES NOT INSURED**, which is <u>absent</u> from the Norris Policy:

3

> We do not insure for loss described in paragraphs 1. and 2. immediately above
> regardless of whether one or more of the items listed in paragraph 3. above:
> a. directly or indirectly cause, contribute to or aggravate the loss; or
> b. occur before, at the same time, or after the loss or any other cause of the loss.

4

5

6

*McDonald* at 733 (in footnote); [11.19.15 Decl. of L.Foreman at 70-71].

7

State Farm issued Norris a policy with a limited Earth Movement exclusion.  *McDonald* is

8

of no assistance to it.

9

**3.  The Additional Coverage for Collapse triggers coverage.**

10

State Farm never addressed this coverage in its Denial despite acknowledging the deck and

11

patios fell to the ground. [Dkt. #1-3 at 26]. The coverage is expansive as it covers direct physical

12

loss "involving" collapse of "any part of a building."  "Involving"  is not the same as "caused by";

13

thereby extending the coverage to all repairs so long as part of the building suffered "collapse."

14

> 11. **Collapse.** We insure only for direct physical loss to
> covered property involving the sudden, entire collapse
> of a building or any part of a building.

15

16

> Collapse means actually fallen down or fallen into
> pieces. It does not include settling, cracking, shrink-
> ing, bulging, expansion, sagging or bowing.

17

18

> The collapse must be directly and immediately
> caused only by one or more of the following:

19

20

> a.      perils described in **SECTION I  -  LOSSES IN-
> SURED, COVERAGE B   -  PERSONAL
> PROPERTY**. These perils apply to covered
> building and personal property for loss insured
> by this Additional Coverage;

21

22

23

> b.      weight of contents, equipment, animals or peo-
> ple;

24

25

> c.      weight of ice, snow, sleet or rain which collects
> on a roof, porch or deck: or;

PLAINTIFFS' MOT. FOR PARTIAL SJ- 14     (2:14-
cv-01453) - 14

d.      use of defective material or methods in the
construction (includes remodeling or renov-
ation) of the building, if the collapse occurs dur-
ing the course of the construction of the
building.

<u>Loss to</u> an awning, fence, patio, pavement, swim-
ming pool, underground pipe, flue, drain, cesspool,
septic tank, foundation, retaining wall, bulkhead,
pier, wharf or dock, trellis or antenna or its supporting
structure <u>is not included under items b., c. and d.
unless the loss is the direct and immediate cause of
the collapse of the building</u>.  [Emphasis supplied.]

This coverage at Paragraph 1 incorporates the "specified perils" which include **Sudden & Accidental discharge**, a point ignored or overlooked by State Farm.  If it had analyzed coverage under these provisions, the highlighted language would have lead to the conclusion that the home did not have to collapse for the "specified peril" to apply.  This additional coverage, coupled with the undisputed facts about the destruction of the deck, patios, their respective footings, and the caving in of the roof provide coverage for Norris' Loss because no exclusions in the coverage apply.

**4.   The emergency repairs are covered.**

The engineers recommended immediate stabilization of the residence. The home would probably have come apart and fallen down the hill on dead weight alone. Live loading increased this risk and was such a concern Mr. Guillen recommended all furniture and contents be moved to the back of the house.  Snow weight would be add more live load. [Decl. of G. Guillen, ¶ 4].  All engineers recommended the residence be underpinned, on at least a temporary emergency basis. The emergency stabilization work included installation of eighteen (18) 2" diameter pin piles to support the undermined foundation along the southern and eastern portions of the residence. [Decl. of G. Guillen.¶ 4 & Exh. A].

The **Additional Coverages**, ¶ 2, Temporary Repairs, provide that in the event of an Insured Loss, State Farm agrees "to pay the reasonable and necessary cost you incur for temporary

BOWERS FOREMAN, PLLC
Telephone (425) 377-1100
LINDA@LINDAFOREMAN.COM

1    repairs to covered property to protect the property from further immediate damage or loss."

2    [11.19.15 Decl. of L. Foreman, Exh. B at 66].  If the Court finds coverage was triggered under the

3    Policy, this provision is also triggered and allows recovery of all costs Norris incurred for

4    emergency stabilization of the home, including stabilization of the roof.

5    **5. State Farm's attempt to avoid coverage for the foundation repairs by invoking the land**

6    **exclusions should be rejected.**

7            State Farm set out an extensive argument in its Motion to Amend that the temporary and

8    permanent repairs to the foundation were excluded under ¶ 3 of **Property Not Covered**. [Dkt. #18

9    at 1&5].  State Farm provided Case Forensics with the Policy Definitions and asked Case to

10   segregate the "non-dwelling damages" from the "dwelling damages." [11.19.15 Decl. of L.

11   Foreman, Exh. A at 11].  Case Forensics said there was an "absence of damage to footings and

12   concrete floor slabs within the footprint of the house." [*Id.* at 25 & 26].   As far as State Farm is

13   concerned, if the footings and foundation were not cracked or destroyed, they were not damaged.

14   The home being uninhabitable is irrelevant to State Farm.  Despite the Policy defining Dwelling to

15   include "[c] foundation, floor slab and footings supporting the dwelling" and their expert agreeing

16   these building components were undermined, State Farm qualifies this to mean they are covered

17   only if they are physically damaged.  [11.19.15 Decl. of L. Foreman, Exh. B at 63].  State Farm

18   recognizes loss of use as an element of its definition of Property Damage. [*Id.* at 62].  Any

19   reasonable person would believe if their house became uninhabitable because of losing the

20   function of the foundation and footings the Policy would cover repairs.  In fact, **Coverage C—**

21   **Loss of Use** is conditioned on the home being "uninhabitable." [*Id.* at 65].  Under State Farm's

22   method of policy interpretation, the insured must read the land exclusions and deduce these relieve

23   State Farm from repairing the foundation it has promised to insure.[3]

24           State Farm places heavy reliance on ¶3(c) excluding coverage for "*the costs of repair*

25   *techniques designed to compensate for or prevent land instability to any property [.*" [*Id.* at 63].

---

[3] Norris explained in the Opposition to its Motion to Amend that costs for the restoration of the downhill slope were being sought as damages under the extra-contractual claims.  Norris acknowledges that some of the costs to restore the slope and install a retaining wall are not covered due to the land exclusions.

PLAINTIFFS' MOT. FOR PARTIAL SJ- 16     (2:14-
cv-01453) - 16

BOWERS FOREMAN, PLLC
Telephone (425) 377-1100
LINDA@LINDAFOREMAN.COM

"Land instability" is a predicate for application of the exclusion.  The Nelson Engineering Report explains the slope below the residence was not stable and set out recommendations for its restoration. [11.19.15 Decl. of G. Guillen, ¶ 6 & Exh. A]. The residence was stabilized as a result of the erosion.  Nothing was done to stabilize that part of the slope under the foundation.  The foundation was repaired by tying it to the slope.  The missing soil was replaced by foam blocks.  According to Mr. Guillen, the residence was stable once repaired, irrespective of whether the downhill slope was restored. [11.19.15 Decl. of G. Guillen, ¶¶ 4&6].   The repairs were to the residence, not the land.

## VI.    CONCLUSION

Based on the undisputed facts, the Policy and applicable law, Norris asks the Court grant its motion for summary judgment, and rule as a matter of law:

a) the loss and damage incurred was caused by a Loss Insured and no exclusions or limitations apply to defeat coverage;

b) the loss and damage incurred was caused by "collapse" caused by a Loss Insured and no exclusions or limitations apply to defeat coverage;

c)  there is coverage for the emergency and temporary repairs;

d) the full cost of repair of the damage to the dwelling, including the work on the foundation, footing and slab, is covered;

e) Norris is entitled to recover its attorneys fees and expert costs under the *Olympic Steamship Doctrine*.

Dated this 20th day of November 2015.

**BOWERS FOREMAN, PLLC**

*Linda L. Foreman*
Linda L. Foreman, WSBA #11817
Attorney for Peter and Renee Norris

BOWERS FOREMAN, PLLC
Telephone (425) 377-1100
LINDA@LINDAFOREMAN.COM